Argued and submitted September 26, reversed and remanded November 17, 1980,
petition for attorney fees denied March 23 (51 Or App 206, 625 P2d 666),
reconsideration of denial of attorney fees denied May 28,
petition for review of denial of attorney fees allowed June 30, 1981
See later issue Oregon Reports

## HOWARD,
*Petitioner,*

*v.*

## ADULT AND FAMILY SERVICES,
*Respondent.*

### (No. E5-3301-Y1G148-3, CA 17870)
619 P2d 665

Christopher Cadin, The Dalles, argued the cause for petitioner. With him on the brief was Tom Steenson, The Dalles.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P. J.

**JOSEPH, P. J.**

In this judicial review proceeding petitioner seeks remand of an Adult and Family Services Division (AFS) hearing officer's final order.

Petitioner took a child to the County Health Department and was advised to take the child immediately to the hospital. Petitioner's total monthly income was $257.10. She was not receiving welfare benefits, nor did she have insurance coverage for her child. On the day of her child's illness, petitioner had approximately $25. She applied to AFS for benefits under the Emergency Assistance (EA) program; she sought no direct cash assistance for herself, but only prior authorization by AFS for payment to the hospital of medical costs that would be incurred for her child. Her request for assistance was denied by the AFS branch office. She left the office, took her child to the hospital emergency room and incurred charges of $60.

Petitioner was not denied EA because she did not have an emergency medical problem. The order recognized that she had an emergency financial need. Furthermore there was no issue about petitioner's meeting eligibility requirements for general aid to dependent children. The reason she was denied EA is because at the time of her child's illness she was not also facing eviction, a utility shutoff or a need for having household items repaired or replaced, nor was she in need of food. In the words of the order:

"*** Nothing in the record indicates that claimant had emergency need for help with any financial need other than that arising from the medical care. Since claimant's only emergency financial need arose from the medical need, she was not eligible for emergency assistance to pay the costs of the medical care."

In Oregon's EA program, it is an eligibility requirement that an applicant apply all available liquid assets to meet the emergency need. OAR 461-05-610(2)(b)(App-2). That is, to be eligible to receive EA, an applicant must have a "net financial need." The hearing officer here relied on a provision in the AFS policy manual:

"All [EA] medical care must be prior authorized by the branch office. Exceptions are permitted only when a medical emergency arises which prevents the provider from contacting the branch office before services are provided. ."

Emergency assistance funds are not used for routine physical examinations. *Medical assistance is provided only if there is also emergent need for financial assistance."* (Emphasis supplied.) AFS policy manual II-II-M-6-D.

Petitioner says that the emphasized part of the policy statement is consistent with the general eligibility approach used in the EA program. That is, an EA medical payment is not to be made unless the applicant is eligible for ADC, under the financial standards the agency uses, and has a "net financial need" for assistance. She suggests that the statement appears to be simply an instruction to AFS personnel to provide EA in a medical emergency only in the amount of the "net financial need."

The branch office and the hearing officer viewed the policy statement quite differently. They applied it as if it means that to be eligible for an EA medical payment the applicant must at the same time have an emergent need for some item which the EA program covers besides the medical care required.

We agree with the petitioner. Of course AFS may create and rely on policy. *Wehrman v. Public Welfare Div.,* 24 Or App 141, 544 P2d 606, *rev den* (1976); *Burke v. Public Welfare Div.,* 31 Or App 161, 570 P2d 87 (1977). However, AFS must also adhere to its rules and policies, and in a contested case where it is found that it has not done so, remand is appropriate. *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980); *Allen v. Adult and Family Services,* 47 Or App 417, 614 P2d 616 (1980); *see also* ORS 183.482(8)(b).

The hearing officer clearly misinterpreted the policy statement. OAR 461-05-600(App-2) states that the EA program is intended to meet medical needs, and the regulation does not condition medical EA on the receipt of EA on some other basis. We find nothing in the regulations concerning the scope, payment standards and eligibility criteria under the EA program that could fairly be interpreted to include such a condition. The eligibility rules simply and clearly state that the criteria are the same as in the ADC program, none of which includes the condition which the hearing officer interpreted into the policy statement.

Reversed and remanded.