On petitioner's petition for attorney fees filed September 30, 1980, petition denied March 16, reconsideration denied June 4, petition for review allowed June 30, 1981 (291 Or 151)

**BROWN,**
*Petitioner,*
*v.*
**ADULT AND FAMILY SERVICES et al,**
*Respondents.*
(No. 5-3301-YIG005-5, CA 16980)

625 P2d 160

Tom Steenson, Oregon Legal Services Corporation, The Dalles, for the petition.

James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, William F. Gary, Deputy Solicitor General, and James C. Rhodes, Assistant Attorney General, Salem, contra.

Before Joseph, Chief Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

## BUTTLER, J.

Petitioner, the prevailing party in *Brown v. Adult and Family Services,* 48 Or App 232, 616 P2d 580 (1980), has moved for an award of attorney fees under ORS 183.495, which provides:

"Upon judicial review of a final order of an agency when the reviewing court reverses or remands the order it may, in its discretion, award costs, including reasonable attorney fees, to the petitioner to be paid from funds appropriated to the agency."

This is not a case in which the administrative agency out of whose funds an award would be drawn has functioned as a disinterested adjudicatory tribunal. *Cf. Davidson v. Employment Div.,* 51 Or App 219, 625 P2d 162 (1981) (petition for attorney fee denied); *Wasco County v. AFSCME,* 31 Or App 765, 571 P2d 549 (1977). Neither is it a case where the cost of the litigation may be considered a normal cost of doing business by a commercial enterprise. *See Polizos v. OLCC,* 40 Or App 135, 137-38, 594 P2d 1248 (1979) (petition for attorney fees denied).

In this case, we reversed an order of an administrative hearing officer from Adult and Family Services, who ruled that proceeds of a private loan were an asset available to reduce petitioner's need and hence her welfare grant amount. We found that the hearing officer misinterpreted the applicable administrative rules, because the loan was a liability rather than an asset. 48 Or App at 233.

The state argues that an award of attorney fees is inappropriate here for two reasons. First, an award to a legal aid service puts the court in the executive position of reducing the budget of one agency and increasing that of another. Second, because the legislative intent of the statute is to use public funds to reimburse a citizen for legal expenses where that citizen has successfully challenged an arbitrary agency action, the rationale no longer makes sense when the public has already paid for an attorney from legal aid for the citizen.

As to the first point, Oregon Legal Services is not a state agency, but is a nonprofit corporation. Moreover,

according to petitioner's brief, Oregon Legal Services receives no state funds. *But see Dennis v. Chang,* 611 F2d 1302, 1305 (9th Cir 1980). (In light of language, legislative history and purposes of Civil Rights Attorneys' Fees Awards Act of 1976, codified at 42 USC § 1988, award of attorney fees to litigant represented by legal services organization may not be denied on ground that defendant partially supported organization through state funding.)

As to the second point, we conclude that the purpose of ORS 183.495 would not be served by an award of attorney fees here, even if petitioner were represented by private counsel.[1]

The legislative history of ORS 183.495 indicates that the Attorney General's office offered an amendment to HB 2068 to give the Court of Appeals the discretionary authority to award attorney fees to the petitioner in an administrative proceeding in those cases in which the agency has acted arbitrarily. Minutes, Senate Committee on Judiciary, June 11, 1975, HB 2068, at 2. Attorney General Lee Johnson testified as follows before the Senate Committee on Judiciary on June 11, 1975, on HB 2068 (Tape 46, side 2):

> "But I feel strongly, and I know that Judge Schwab has testified before this committee; and I have polled him on this, that the Court of Appeals should have authority to award attorney fees to a petitioner who has appeared in an administrative proceeding. There are some cases that come up where the agency has been arbitrary; there is not much money in controversy, and I think the state should be assessed for attorney fees in those cases. I do not think this will have any dramatic effect but there are some cases where this is justified, and that is the purpose of the amendment—it simply provides that the Court of Appeals can award attorney fees *in its discretion.*"

---

[1] In *West v. French,* 51 Or App 143, 625 P2d 144 (1981), this court allowed an award of attorney fees to a prevailing party represented by a legal aid attorney in order to effectuate an overriding purpose of ORS 91.755, which we found to be to encourage the settlement or speedy resolution of landlord-tenant disputes by exposing both parties to the risk of a judgment for attorney fees. We reasoned that those purposes would tend to be frustrated if only the tenant represented by legal aid was threatened with the award of an attorney fee against him or her. In view of our disposition of this petition, we find it unnecessary to determine if any overriding remedial purpose of ORS 183.495 might justify an award of attorney fees in an otherwise appropriate case.

Our review of the record[2] satisfies us that the agency action in this case was an erroneous interpretation of administrative rules. In an unrelated case, the same hearing officer eight months previously had decided a similar question differently.[3] His determination in this case, however, was addressed to the issue as framed by claimant, and on that issue was correct, although the ultimate conclusion was wrong.[4] We decline to characterize what appears to be a good faith interpretation of administrative rules, albeit erroneous, as arbitrary agency action, particularly where, as here, there had been no definitive pronouncement on the issue. We therefore decline to award attorney fees to petitioner.

Petition denied.

---

[2] Petitions for attorney fees pursuant to ORS 183.495 must make a showing that the agency action was arbitrary.

[3]

"The Branch Office argues also that the fact that claimant obtained a loan to purchase the stove disqualifies him for Emergency Assistance. The apparent reasoning is that the loan constitutes a 'resource', and that claimant was thus not in need of Emergency Assistance. This argument is unpersuasive. The money involved was loaned to claimant for the express purpose of purchasing a stove. The loan must be paid back. It does not increase claimant's net worth at all. The fact that claimant did borrow money establishes, by itself, that he did not have means to purchase the stove. The Hearing Officer concludes that the loan does not disqualify claimant from receiving Emergency Assistance for the purpose of the stove."

[4]

"Claimant seeks to exclude the loan proceeds from these definitions by asserting that claimant had no 'property interest' in them. Under 461-04-205, the proceeds would thus not be a resource. The Hearing Officer concludes, however, that claimant did have a property interest in the loan proceeds when she received them. That is to say, she 'owned' these proceeds until they were expended. The fact that the loan created a legal liability does not mean that the proceeds were not claimant's property. The lender's right to expect repayment of the amount of the loan is not the same thing as retention by the lender of a property interest in the proceeds."

"Since the loan proceeds were the property of claimant, they were a resource under the rules noted above. They also constitute, under 461-04-030, income, in that they were a 'receipt', or 'benefit.' The distinction between resource and income is somewhat muddled under the above noted rules, as income, under 461-04-025, is described as a type of resource. According to other rules, however, such as 461-04-230, a resource may be retained by an applicant or recipient up to a certain level. Income, presumably, cannot be so retained. In this case, however, the distinction is not important, because claimant did in fact spend the money on a maintenance item. There is no question of the money being put aside as an allowable reserve or resource."