Argued and submitted June 2, reversed and
remanded for reconsideration October 13, 1982,
petition for attorney fee allowed in amount of $1,000
August 10, 1983 (64 Or App 288, 668 P2d 426)

# WASSON,
*Petitioner,*

*v.*

# ADULT AND FAMILY SERVICES DIVISION et al,
*Respondents.*

(No. 2-1401-AD2420, CA A21777)

652 P2d 358

L. Ramsay Weit, Portland, argued the cause and filed the briefs for petitioner.

Jan Peter Londahl, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner, a recipient of Aid to Dependent Children (ADC), seeks judicial review of a determination of the Adult and Family Services Division (AFSD) that her aid grant must be reduced by an amount paid to her by the father of her children as restitution for damaging her car. We reverse and remand.

Petitioner was a recipient of ADC during the fall of 1980 after she had separated from John Jennings, the father of her two small children, and moved in with her parents in October. On November 6, Jennings took petitioner's car, which had a "bluebook" value of at least $2,300, from her parents' home and "totalled" it in an accident. Later that day, Jennings gave petitioner's father $300 to help pay the cost of a new car for petitioner. Petitioner also obtained $750 from a wrecking company for the salvage value of her car; she paid approximately $100 of that amount to a towing company.

On November 7, 1980, petitioner purchased another automobile for $1,000, using the remaining $646 from the sale of the wreckage, $54 from her parents, and the $300 she had received from Jennings. AFSD subtracted the $300 paid by Jennings from petitioner's November ADC grant. Petitioner protested and obtained a hearing. On June 4, 1981, the agency issued a final order that approved the grant reduction on the basis of the agency's conclusion that the money was "income" that petitioner could have used to meet her need: "[C]laimant was free to use the money as she wished, despite Mr. Jensen's [sic] intentions." Petitioner sought judicial review. After two withdrawals for reconsideration, AFSD issued a final order on January 22, 1982, declining to change the original order.

The outcome of this case hinges on the construction of OAR 461-04-090 and OAR 461-04-100(1). At the time of the agency's order,[1] OAR 461-04-090, Fixed and Liquid Asset Limits, permitted each ADC recipient to

---

[1] All pertinent rules have been changed since AFSD acted in petitioner's case. The rules are quoted here as they read at the time of the agency's action.

possess one licensed motor vehicle of any value without adverse effect on ADC eligibility. OAR 461-04-100(1) provided that:

"Liquid and fixed assets within allowable limits may be accumulated at any time from disregarded income *and lump sum payments from non-recurring sources.* * * *" (Emphasis supplied.)

Petitioner contends that the one-time $300 payment from Jennings should be treated like insurance proceeds. According to a recent AFSD ruling applying OAR 461-04-100, receipt of insurance proceeds that compensate for the loss of an exempt automobile will not result in a grant reduction if the recipient reinvests the proceeds in another vehicle. *In re Lori V. Sahli, Claimant,* AFS Case No. 2-1401-025468-2 (final order dated 2/23/81). The question in the *Sahli* proceeding was whether an ADC grant overpayment resulted from claimant's unreported receipt of insurance money to cover the loss of her car. AFSD's final order concluded that:

"Claimant's insurance settlement was to cover loss through property damage and for personal injuries. The portion received for property damage, the claimant spent to replace her damaged automobile. * * * AFS Rule 461-04-100 allows fixed and liquid assets to be accumulated from one time lump sum payments up to the allowable limit. AFS also permits ownership of one motor vehicle, in addition to the allowable reserves. Claimant's use of the $1,300 to replace her damaged car was merely a use of the funds to replace a loss of an exempt resource.

"* * * * *

"* * * [T]here is no overpayment."

Petitioner argues that Jennings was "effectively self-insured," that his $300 payment was "in lieu of an insurance payment" and that the money should therefore be treated in the same manner as other insurance settlements, *i.e.,* it should not be considered in determining ADC eligibility or grant amount.

Petitioner also contends that the $300 payment should be considered proceeds from the conversion of an exempt asset by analogy to proceeds from the conversion of an ADC recipient's home. Under former OAR 461-04-055, proceeds from the conversion of a home did not render a recipient ineligible to receive assistance, if the recipient

reinvested the funds in another home within specified time periods. Petitioner argues that, because she promptly reinvested the $300 in a new car, the car and home situations are analogous.

Finally, petitioner argues that her transactions amounted to nothing more than a change in the form of an exempt asset, from automobile to proceeds to automobile, and that she should not be penalized for replacing an exempt asset with money made available for that purpose.

AFSD does not counter petitioner's arguments, except to assert that it is under no duty to analogize:

> "While the division could have avoided a contest in this proceeding by 'analogizing' the payment from petitioner's estranged husband to the proceeds from an insurance settlement, it was under no obligation to do so. A particular set of circumstances governed by administrative rule are either within or without the language of the rule; and an agency has no duty to any particular claimant to make analogies in order to arrive at a desired or preferred result."

Instead, AFSD argues that this case is purely a dispute about the meaning of the first sentence of OAR 461-04-100(1). AFSD seizes on petitioner's assertion that the $300 was a lump-sum payment from a "non-recurring source" and attempts to rebut that assertion:

> "* * * [T]he father of petitioner's children, who has a continuous obligation to provide support for those children, cannot, under any reading of the language of the rule, be regarded as a 'non-recurring' source of income."

The flaw in this argument is that, according to AFSD's own findings of fact, the $300 payment to petitioner

> "* * * was not considered as child support by either the claimant or [Jennings]. The money was paid to cover costs involved in the destruction of the claimant's automobile. [Jennings] has not nor [sic] was not at the time, making child support payments."[2]

---

[2] AFSD initially believed that the $300 payment was for child support, and both Jennings and petitioner characterized it as "support" at different times. However, AFSD expressly found that it was not child support and that petitioner may well have misunderstood the meaning of the term "support" when she used it.

AFSD's argument therefore seems to be in direct conflict with its own findings of fact.

As noted, we refer to AFSD's "argument," *i.e.,* the argument presented in AFSD's *brief.* In fact, AFSD has never prepared an *order* in response to the finding of fact that the money was paid for the automobile and that Jennings has never made child support payments. After the appeal from AFSD's initial order, AFSD withdrew its order pursuant to ORS 183.482(6) and made the additional finding of fact just referred to. The new final order, dated January 19, 1982, in addition to its new finding of fact, contains sections labeled "conclusions and reasons" and "final order." Unfortunately, the "conclusions and reasons" section merely contains a recitation of the arguments presented by the parties; the "final order" section merely reaffirms the initial determination of AFSD without further explanation or any discussion of the significance of the additional finding of fact. In view of this, it is necessary to refer to the original order for AFSD's rationale. That original order, entered on June 2, 1981, contained a single paragraph of explanation as to AFSD's ruling:

> "Claimant's final argument is that, regardless of whether she was eligible for additional Emergency Assistance, the Branch Office erred in considering the $300 payment from Mr. [Jennings] as available income in computing claimant's November ADC grant. The argument here is that as the money was given to help claimant purchase a new automobile, it was thus not available to meet claimant's needs. It is concluded, however, that claimant was free to use the money as she wished despite Mr. [Jenning's] possible intentions. There is thus no basis in the policy for excluding this income from consideration."

■ ■ On the basis of the new finding of fact, AFSD's old explanation as to why the $300 payment had to be treated as income no longer follows. The fact that Jennings had made no other payments for child support to the claimant or for the claimant's benefit would appear, under AFSD's own definitions, to establish that this $300 payment is a "non-recurring source." AFSD has offered no explanation why it is not. The collective findings of fact and conclusions of law in the two orders entered in this case are therefore insufficient, because the conclusions and order do not

follow from the facts found. *See McCann v. OLCC*, 27 Or App 487, 556 P2d 973 (1976); *rev den* (1977).

Accordingly, the order of AFSD is reversed and the matter remanded for reconsideration.[3]

---

[3] In reversing and remanding, we also note that the last order of AFSD makes no response at all to claimant's contentions that claimant's handling of the $300 was simply a reinvestment of the proceeds from the conversion of an exempt asset into the purchase of another exempt asset of lesser value and that the amount should therefore not be charged against her ADC grant because it is in fact a portion of an exempt asset. *See* former OAR 461-04-090. If AFSD wishes to reaffirm the result it has reached in the order, the new order will not be complete unless it responds to the last contention. *See Hillcrest Vineyards v. Douglas Co.*, 45 Or App 285, 608 P2d 201 (1980); *Graham v. OLCC*, 20 Or App 97, 104, 530 P2d 858 (1975).