Argued and submitted September 11, reversed and remanded for reconsideration October 31, 1984

# KUYKENDALL,
## *Petitioner,*

*v.*

# ADULT & FAMILY SERVICES DIVISION,
## *Respondent.*

## (5-2001-AHE 481-9; CA A29525)

690 P2d 517

Roberta J. Lindberg, Lane County Legal Aid Service, Eugene, argued the cause and filed the brief for petitioner.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner seeks review of a Reconsideration Order of the Adult and Family Services Division terminating his General Assistance (GA) benefits as of May 31, 1983. We hold that the record is inadequate for AFSD to evaluate the evidence properly and therefore reverse and remand for further proceedings.

Petitioner has received GA benefits since December, 1981, because of a number of physical and mental difficulties. At the request of AFSD's medical review team (MRT) he had an evaluation on February 14, 1983, by Dr. Henderson, his treating psychiatrist, who reported that, among other problems, petitioner has a bipolar disorder, cyclic type, and that he was then in a hypomanic state.[1] He expects the disorder to last the rest of petitioner's life. Henderson stated that petitioner was not then employable; he hoped that, with treatment, petitioner would be stablized sufficiently to be employable within two or three months. MRT, disagreeing with Henderson, found petitioner to be employable. Its analysis emphasized that his other problems appeared to be under control. It did not mention the manic-depressive disorder which was the basis for Henderson's opinion. AFSD thereafter terminated petitioner's benefits as of May 31, 1983.

At petitioner's request, AFSD held a hearing on the termination on June 16, 1983. At the hearing, petitioner presented a statement from Henderson indicating that he was not employable for another 60 days because of depression. Petitioner testified that he had mood swings from high to low but that he had been mostly low recently.

The hearings officer issued a final order on July 7, 1983, upholding the termination of petitioner's benefits. Petitioner then filed a petition for review. After the submission of his brief, AFSD withdrew its order for reconsideration. ORS 183.482(6). On December 19, 1983, it entered a Reconsideration Order again upholding the denial. Petitioner filed an amended petition for review and a supplemental brief; we review only the Reconsideration Order.

---

[1] A more common term for petitioner's condition is manic-depression. Hypomania is a mild mania.

AFSD found that petitioner suffers from manic-depressive disorder, that his medical problems have remained essentially the same since 1981, that Henderson in February 1983, anticipated that he would be employable within 60 to 90 days, that Henderson reported in June that petitioner was not employable for 60 days because of depression and that MRT had not reviewed Henderson's last report. The order also referred to petitioner's physical problems, which appeared to be under control. It then quoted the MRT determination that there was no specific objective data to support petitioner's claim of total disability, because he could engage in employment concurrently with his medication. It further held, however, that the benefits did not terminate until after the time when Henderson said in his February report petitioner would probably be stablized. Henderson's June statement apparently played no role in the analysis.

We have previously noted that a hearings officer must make an independent determination of employability rather than relying on the MRT decision. *Amundson v. AFSD,* 63 Or App 313, 663 P2d 810 (1983). The limited and conclusory nature of this order makes it questionable whether he did so. The agency must also respond to all contentions which a petitioner makes in support of a claim. *Wasson v. AFSD,* 59 Or App 634, 652 P2d 358 (1982); *see also Hillcrest Vineyards v. Douglas Co.,* 45 Or App 285, 608 P2d 201 (1980). The order obviously fails in this respect, because it relies on Henderson's prediction in February of when petitioner would be stablized without discussing his June statement that petitioner then remained unemployable. It therefore fails to consider all of the evidence. The fact that MRT did not have Henderson's June opinion before reaching its conclusion does not excuse the hearings officer's failure; indeed, that failure is some indication that the hearings officer improperly deferred to MRT's supposed expertise.

There is, however, a more basic problem with the opinion. Whether or not the hearings officer deferred to MRT, he clearly gave its conclusions considerable weight. Yet there is inadequte evidence in the record for him to determine what weight to give MRT's disagreement with Henderson, claimant's psychiatrist. MRT consists of three registered nurses and a program specialist. OAR 461-05-230(1). It consults physicians only when there is a "controversial or unusual"

medical situation. OAR 461-05-230(4). There is no indication that it did so in this case. Petitioner relied on the expertise of a medical doctor; the hearings officer could not know from the record on what expertise—if any—MRT relied. He thus could not evaluate the evidence intelligently, for he could not know if MRT's opinion was that of a psychiatrist or of a nurse. Weighing MRT's opinion against that of Henderson is a determination of persuasiveness, but AFSD has not explained that determination nor has it indicated why it believes that there is sufficient evidence in the record to make it. *See Lewis v. Employment Division,* 66 Or App 303, 673 P2d 1376 (1984). The lack of information on MRT's members' qualifications to reach a conclusion different from Henderson's or on what outside information, if any, it received prevented AFSD from knowing, on any legally sustainable basis, what weight to give the evidence upon which it relied. AFSD must reconsider its decision.[2]

Reversed and remanded for reconsideration.

---

[2] We note a potential additional problem with the use of the MRT report in this case. MRT's conclusions are contained in a memorandum from a person who is identified as a registered nurse. There is nothing to show whether she is a member of MRT, nor who the other members are, nor whom they consulted. There is nothing to show what special training, if any, the MRT members have had that qualifies them to make the decisions they make. It is therefore questionable whether the MRT report is "of a type commonly relied upon by reasonably prudent persons in conduct of their serious affairs" and thus admissible under ORS 183.450(1). *See Higley v. Edwards,* 67 Or App 488, 678 P2d 755 (1984). MRT reports play an important role in disability cases, but it is impossible to cross-examine the reports' authors concerning the bases for their opinions, as would be permissible if they testified. ORS 183.450(3). AFSD hearings officers apparently give great weight to those marginally admissible, untested opinions of unknown people in reaching their conclusions. Although petitioner was not represented at the hearing and did not object to the admission of the MRT report, AFSD should keep these problems in mind in determining what weight to give it on remand.